**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FISHER TOOL CO., INC., d/b/a
ASTRO PNEUMATIC TOOL CO.,              )
                                       )
                   Plaintiff,          )
                                       )
                   v.                  )      No. 13 C 7252
                                       )
STAMPEDE TOOL CO., a/k/a STAMPEDE      )
TOOL WAREHOUSE, INC., RICHARD R.       )
KUHN, JOAN P. KUHN, and GERALD         )
F. HASTINGS,                           )
                                       )
                   Defendants.         )


**<u>MEMORANDUM OPINION</u>**

    Before the court are: (1) the motion to dismiss of defendants
Richard R. Kuhn and Joan P. Kuhn; and (2) the motion to dismiss of
defendant Gerald F. Hastings.  For the reasons explained below, we
grant the Kuhn defendants' motion in part, and deny it in part; and
we deny Hastings's motion.

**<u>BACKGROUND</u>**

    Plaintiff Fisher Tool Company, Inc., d/b/a Astro Pneumatic
Tool Co. ("Astro"), sells tools, paint, and other products in the
automotive aftermarket.  (First Am. Compl. ¶ 1.)  In 1983,
defendant Richard Kuhn told Astro that he owned a startup company
called "Stampede Tool Company" that sold automotive parts and
tools.  (<u>Id.</u> at ¶ 11.)  Astro agreed to supply tools to Kuhn's
startup on open credit terms, but first required personal

guaranties from Kuhn and defendant Gerald Hastings.[1] Both guaranties are dated August 1, 1983, and both identify the "borrower" as "Stampede Tool Company." (<u>Id.</u> at ¶¶ 13-14.) The complaint alleges that Astro began supplying tools to "Stampede Tool Company" in "approximately" 1983. (<u>Id.</u> at ¶ 15.) In 1984, someone (presumably Kuhn) incorporated Stampede Tool Warehouse, Inc. ("Stampede Warehouse"). (<u>Id.</u> at ¶ 2.) It is reasonable to infer from the complaint that "Stampede Tool Company" was merely a trade name for Kuhn's and Hastings's tool business, and not a distinct legal entity. (<u>See, e.g.,</u> <u>id.</u> at ¶ 77 (alleging that "Stampede Tool Company" "never existed" as a separate legal entity).) Throughout the parties' 30-year business relationship, Astro believed that it was dealing with "Stampede Tool Company" and that its debts were guaranteed by Kuhn and Hastings. (<u>Id.</u> at ¶ 15-22.)

From December 2012 through June 2013, Stampede Warehouse doubled the size of its usual orders from Astro. (<u>Id.</u> at ¶ 23.) It did not pay those invoices, totaling $120,567.06. And on July 17, 2013, it executed an Assignment for the Benefit of Creditors. (<u>Id.</u> at ¶ 26.) Meanwhile, Kuhn and Hastings have refused Astro's demands for payment under the guaranties. (<u>Id.</u> at ¶¶ 28-31.)

---

[1] The complaint does not explain Hastings's relationship to Stampede Tool Company. Hastings has filed an affidavit with his motion to dismiss that fills in some of the details. However, we decline to consider his affidavit in ruling on his motion to dismiss. <u>See, e.g.,</u> <u>Cardenas v. Abbott Laboratories</u>, No. 11 C 4860, 2011 WL 4808166, *3 (N.D. Ill. Oct. 7, 2011) (declining to consider an affidavit filed in support of a motion to dismiss).

Astro has filed a six-count complaint asserting claims for: (1) breach of contract against Kuhn (Count I); (2) breach of contract against Hastings (Count II); (3) fraud against Stampede Warehouse (Count III); (4) breach of fiduciary duty against Richard and Joan Kuhn as Stampede Warehouse's officers (Count IV); (5) reformation with respect to Kuhn's guaranty (Count V); and (6) reformation with respect to Hastings's guaranty (Count VI).

## DISCUSSION

The Kuhns have moved to dismiss Counts I (breach of contract), IV (breach of fiduciary duty), and V (reformation). Hastings has moved to dismiss Counts II (breach of contract) and VI (reformation).

### A.    Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating

a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. <u>Iqbal</u>, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

**B.    Breach of the Guaranties (Counts I, II) and Reformation (Counts V, VI)**

Kuhn and Hastings argue that, construing the guaranties in their favor, they only agreed to guaranty the obligations of "Stampede Tool Company," not "Stampede Tool Warehouse, Inc." It is true that Illinois law favors guarantors. <u>See</u> <u>Riley Acquisitions v. Drexler</u>, 946 N.E.2d 957, 965 (Ill. App. Ct. 2011) ("The liability of a guarantor is strictly construed in his favor and against the party in whose favor the guaranty runs.") (citation and internal quotation marks omitted). Nevertheless, guaranties are still governed by ordinary contract principles. <u>See id.</u> ("General rules of contract construction apply to guaranty contracts . . . ."). That means that they must be construed as a whole and in a way that does not yield an absurd result. <u>See</u> <u>Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.</u>, 902 N.E.2d 1178, 1190 (Ill. Ct. App. 2009). According to the complaint, "Stampede Tool Company" was not formed or incorporated as a limited-liability entity when the defendants executed the guaranties. If the defendants' interpretation is correct, then

they superfluously guaranteed their *own* performance. (*See* First Am. Compl. ¶ 77 ("The Kuhn Guarantee as written is illogical since Stampede Tool Company never existed.").) We can avoid this absurd result by construing the guaranties to apply to the defendants' tool *business*, which they briefly conducted under the trade name "Stampede Tool Company" before incorporating Stampede Tool Warehouse, Inc. (*See* First Am. Compl. Counts I & II.) Or else we can reform the guaranties to achieve the same result — substituting "Stampede Tool Warehouse, Inc." for "Stampede Tool Company" — which Astro contends is consistent with the parties' actual intentions. (*See* <u>id.</u> at Counts V & VI.) In either case, the circumstances surrounding the guaranties and the parties' course of performance may be relevant. We conclude that Astro is entitled to discovery that may support its theory. Richard Kuhn's motion to dismiss Counts I and V, and Hastings's motion to dismiss Counts II and VI, are denied.

## B.   Breach of Fiduciary Duty (Count IV)

In Count IV, Astro claims that the Kuhns, as Stampede Warehouse's officers, owed a fiduciary duty to Astro and the company's other creditors after the company became insolvent. "In general, the officers and directors of a corporation do not owe fiduciary duties to creditors of the corporation." <u>Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec</u>, 529 F.3d 371, 384 (7th Cir. 2008). "But in special circumstances, such as insolvency,

directors do owe a duty to creditors." Id.  The Illinois Supreme

Court has not addressed whether an individual creditor may bring a

direct claim for breach of this "special" duty.  Id.  Some Illinois

appellate courts have allowed creditors to bring such claims.  See

O'Connell v. Pharmaco, Inc., 493 N.E.2d 1175, 1181-82 (Ill. App.

Ct. 1986) ("When an officer breaches his fiduciary duty by

wrongfully converting or misappropriating funds and thereby

adversely affecting the relation between the corporation and its

creditors, a creditor can maintain an action against the officer

personally."); Circle Security Agency, Inc., 425 N.E.2d 1283, 1286

(Ill. App. Ct. 1981) ("It is well settled that where an officer or

agent of a corporation breaches his fiduciary responsibility by

wrongfully converting or misappropriating funds and thereby

adversely affecting the contractual and equitable relation between

the corporation and a creditor, the creditor can maintain an action

against the officer personally.").  The Kuhns argue that creditors

cannot bring such claims, relying primarily on Prime Leasing, Inc.

v. Kendig, 773 N.E.2d 84 (Ill. Ct. App. 2002).  The Prime Leasing

court held, as a matter of Delaware law, that "only the corporation

or its representative in bankruptcy" may maintain a claim for

breach of the "special circumstances" fiduciary duty.  Id. at 97.

The Delaware Supreme Court later reached the same conclusion in

North American Catholic Educational Programming Foundation, Inc. v.

Gheewalla, 930 A.2d 92, 103 (Del. 2007).  The Gheewalla court

reasoned that allowing direct claims by individual creditors would create conflicts of interest:

> Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors, would create uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation.

Id. Several district courts have predicted that the Illinois Supreme Court would follow Prime Leasing and Gheewalla. See GoHealth v. Simpson, No. 13 C 02334, 2013 WL 6183024, *5 n.3 (N.D. Ill. Nov. 26, 2013); RMB Fasteners, Ltd. v. Heads & Threads Intern., LLC, No. 11 CV 02071, 2012 WL 401490, *14-15 (N.D. Ill. Feb. 7, 2012); In re Netzel, 442 B.R. 896, 899-900 (N.D. Ill. Bkr. 2011). One district court has reached the opposite conclusion. See Dexia Credit Local v. Rogan, No. 02 C 8288, 2003 WL 22349111, *5 (N.D. Ill. Oct. 14, 2003) (predicting that the Illinois Supreme Court would not follow Prime Leasing). The Dexia court rejected Prime Leasing's per se rule, holding instead that individual creditors have standing to sue for injuries that are "personal," but not injures that affect "all creditors alike." Id. at *6 (relying on Seventh Circuit case law in the federal bankruptcy context).

We find <u>GoHealth</u>, <u>RMB Fasteners</u>, and <u>In re Netzel</u> more persuasive than <u>Dexia</u>.  First, the state-court cases that <u>Dexia</u> relied on do not meaningfully analyze the standing of individual creditors to pursue direct claims for breach of fiduciary duty.  <u>See In re Netzel</u>, 442 B.R. at 899-900 (distinguishing the cases that <u>Dexia</u> cited because they did not address standing); <u>see also GoHealth</u>, 2013 WL 6183024, *5 n.3 (similar); <u>RMB Fasteners</u>, 2012 WL 401490, *15 (similar).  Second, <u>Dexia</u> relied on a line of Seventh Circuit authority that the <u>Prime Leasing</u> court rejected as inapplicable.  <u>See Dexia</u>, 2003 WL 22349111, *6 (distinguishing between "personal" and "general" creditor claims) (citing <u>Koch Refining v. Farmers Union Cent. Exchange, Inc.</u>, 831 F.2d 1339 (7th Cir. 1987)); <u>Prime Leasing</u>, 773 N.E.2d at 97 (<u>Koch</u> "recognizes that creditors generally have standing, post-bankruptcy, to raise personal claims, but nothing in that case suggests that special-circumstance fiduciary duty claims are personal to an individual creditor.").  Although the <u>Prime Leasing</u> court was applying Delaware law, we have no reason to believe that it would have reached a different result under Illinois law.  As the court in <u>In re Netzel</u> pointed out, <u>Prime Leasing</u> cited Delaware cases only for the general proposition that the officers of an insolvent corporation owe a fiduciary duty to the corporation's creditors.  <u>See Prime Leasing</u>, 773 N.E.2d at 96 (citing <u>Geyer v. Ingersoll Publications Co.</u>, 621 A.2d 784, 787 (Del. Ch. 1992)); <u>see also In re Netzel</u>, 442 B.R. at 900.  It did not cite any Delaware cases

supporting its conclusion that "[t]he special-circumstance fiduciary duty runs to all creditors as a group, and not to any individual creditor." Prime Leasing, 773 N.E.2d at 97.[2] Rather, that conclusion appears to have been based upon the nature of the duty itself. Id. Finally, Prime Leasing is consistent with Illinois Supreme Court cases holding that the insolvent corporation's assets are held in trust for the benefit of *all creditors*. See Atwater v. American Exchange Nat. Bank, 38 N.E. 1017, 1020 (Ill. 1893) ("When a corporation becomes insolvent, its assets are regarded as a trust fund for the payment of its creditors; and the directors, who are the agents or trustees of the stockholders during the solvency of the corporation, occupy a fiduciary relation towards the creditors when the corporation becomes insolvent."); Beach v. Miller, 22 N.E. 464, 466 (Ill. 1889) ("[T]he moment a corporation becomes insolvent its directors occupy a different relation. The assets of the corporation must then be regarded as a trust fund for the payment of all its creditors, and the directors occupy the position of trustees, and, a fiduciary relation then existing, they may with propriety be prohibited from purchasing the trust property."); see also Prime Leasing, 773 N.E.2d at 97 ("The special-circumstance fiduciary duty runs to all creditors as a group, and not to any individual creditor. It includes creditors in the entire corporate constituency to which a duty is owed."). Astro claims that the

---

[2]/ Recall that Prime Leasing predates the Delaware Supreme Court's Gheewalla decision by five years.

Kuhns breached their fiduciary duty by "causing Stampede to acquire assets of Astro to pay other creditors to whom Astro had and has no obligations." (First Am. Compl. ¶ 68.) It is difficult to see how this claim can be squared with <u>Atwater</u> and <u>Beach</u>. <u>Cf. GoHealth</u>, 2013 WL 6183024, *5 ("It would make little sense to deem that corporate assets are held in trust for all creditors, without preference, but then allow one creditor (or a subset of creditors) to sue and, in effect, jump ahead of other creditors."). Consistent with what appears to be the trend among courts in this district, we predict that the Illinois Supreme Court would not permit an individual creditor to pursue a direct action for breach of the "special circumstances" fiduciary duty. Therefore, we dismiss Count IV with prejudice.

### CONCLUSION

The Kuhn defendants' motion to dismiss [14] is granted in part and denied in part. The motion is denied as to Counts I and V of Astro's First Amended Complaint. It is granted as to Count IV, which is dismissed with prejudice. Hastings's motion to dismiss [22] is denied. A status hearing is set for July 9, 2014 at 10:30 a.m.

DATE: June 26, 2014

ENTER: _____

- 11 -

John F. Grady, United States District Judge